POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCID ALTERNATIVE FUND, LP, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AEHR TEST SYSTEMS, INC., GAYN ERICKSON, and CHRIS P. SIU,<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Lucid Alternative Fund, LP ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Aehr Test Systems, Inc. ("Aehr" or the "Company"), analysts' reports and advisories about the Company, and information readily

obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Aehr securities between January 9, 2024 and March 24, 2024, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Aehr provides test solutions for testing, burning-in, and semiconductor devices in wafer level, singulated die, and package part form, and installed systems worldwide.

3.     In October 2023, Aehr provided guidance for its fiscal full year ("FY") 2024 financial results.  Specifically, the Company stated that it expected "total revenue to be at least $100 million, representing growth of over 50% year over year[.]"

4.     On January 9, 2024, Aehr cut its 2024 revenue forecast from $100 million to $75-$85 million, citing "a delay in the timing of new orders from current and new customers that will most likely impact this fiscal year's revenue.  However, the Company's Chief Executive Officer ("CEO") Defendant Gayn Erickson ("Erickson") was quick to downplay the significance of the updated forecast on a related earnings call that same day (the "Q2 2024 Earnings Call"), claiming that the Company "took a very conservative stance in hopes there's no way we'll miss it on the low end, but I can see scenarios where we could be higher than the [$75-$85 million] range" and advising investors and analysts that the Company had "very good visibility" into its customers' order patterns.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

5.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) contrary to prior representations to investors, Aehr was continuing to experience substantial delays in customer orders; (ii) the foregoing issue was likely to have a material negative impact on the Company's revenue growth; (iii) accordingly, the Company's business and/or financial prospects were overstated; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.     Then, on March 25, 2024, Aehr announced preliminary fiscal Q3 2024 financial results.   Among other things, the Company revealed that its Q3 revenue was estimated to be approximately $7.6 million, versus a consensus of $14.32 million, citing delays in wafer level burn-in system orders for semiconductor devices used in electric vehicles that have created a short-term gap in revenue and profitability.   In addition, Aehr further cut its 2024 revenue forecast, stating that it now expected revenue of at least $65 million versus a consensus of $77.43 million.

7.     On this news, Aehr's stock price fell $3.29 per share, or 22.44%, to close at $11.37 per share on March 25, 2024.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

11.    Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Aehr is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' activities took place within this District.

12.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

13.    Plaintiff, as set forth in the attached Certification, acquired Aehr securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.    Defendant Aehr is a California corporation with principal executive offices located at 400 Kato Terrace, Fremont, CA 94539.  The Company's common stock trades in an efficient market on the Nasdaq Capital Market ("NASDAQ") under the ticker symbol "AEHR."

15.    Defendant Erickson has served as Aehr's CEO at all relevant times.

16.    Defendant Chris P. Siu ("Siu") has served as Aehr's Chief Financial Officer at all relevant times.

17.    Defendants Erickson and Siu are collectively referred to herein as the "Individual Defendants."

18.    The Individual Defendants possessed the power and authority to control the contents of Aehr's SEC filings, press releases, and other market communications.  The Individual

Defendants were provided with copies of Aehr's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Aehr, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

19.    Aehr and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.    Aehr provides test solutions for testing, burning-in, and semiconductor devices in wafer level, singulated die, and package part form, and installed systems worldwide.

21.    In October 2023, Aehr provided guidance for its fiscal FY 2024 financial results. Specifically, the Company stated that it expected "total revenue to be at least $100 million, representing growth of over 50% year over year[.]"

### Materially False and Misleading Statements Issued During the Class Period

22.    The Class Period begins on January 9, 2024, when Aehr hosted an earnings call with investors and analysts to discuss the Company's Q2 2024 results (the "Q2 2024 Earnings Call").  During the scripted portion of the Q2 2024 Earnings Call, Defendant Erickson stated, in relevant part:

> We had another solid quarter with strong year-over-year growth in revenue and net income, both ahead of consensus estimates. Revenue for the quarter was $21.4 million, an increase of 45% year-over-year and we generated non-GAAP net income of $6.7 million, slightly over 31% net profit. For the first half of the fiscal

5

year, we grew revenue 65% over the same period last year. We continue to see increased demand for our wafer level burn-in products and remain confident about the future demand for our unique technology solutions and the multiple market opportunities they address.

\*\*\*

Given the latest forecast from our customers and the uncertainty on the timing of their orders, we believe it makes sense to take a more conservative approach to our fiscal year forecast and have reduced our growth estimates for fiscal 2024 revenue. We're reducing our revenue expectations of at least $100 million this fiscal year by 15% to 25% to a range of $75 million to $85 million in revenue. ***This is still a growth rate of 15% to 30% year-over-year. Despite this uncertainty in timing of orders, we remain confident about the future demand of our unique semiconductor test solutions in the markets we address. We have not reduced our revenue -- our growth expectations for the years ahead, where we continue to see tremendous opportunity***.

We continue to hear from our current customers as well as companies who are engaged in evaluations with that wafer level burn-in is critical to their product roadmaps to address multiple large and growing markets, including battery and hybrid electric vehicles, industrial and solar power conversion, data and telecommunications infrastructure and the new incoming optical IO and co-packaged optics semiconductor markets.

\*\*\*

We expect continued strong demand for our wafer-level burn-in solutions given the continued growth forecast for the markets we address and the expanded market opportunities we're seeing. ***While we reduced our growth estimates for fiscal '24 revenue given the uncertainty on the timing of customer orders, we believe we remain well-positioned to capitalize on the incredible growth of this industry and are poised for continued solid growth for years to come***.

\*\*\*

We're not in DEFCON 5 position here, we lowered our growth expectations but believe that they're going to recover as we go forward. ***Aehr Test has spent a lot of time selecting and focusing on some really incredible markets some of those selected us if you will and we believe we're going to give us the opportunity to have more than our fair share of growth in the semiconductor capital equipment market***.[1]

---

[1] All emphases included herein are added unless otherwise indicated.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

23.     Further, during the Q&A portion of the Q2 2024 Earnings Call, when asked to explain how the Company was claiming to maintain its growth expectations despite the slowdown of customer orders, Defendant Erickson responded, in relevant part:

[W]hen we talk to the customer, one of the hardest things about preparing for this call was even -- not even 30 days ago, we were still hearing across the board from our customers bookings and shipment slot requests that were consistent with us exceeding $100 million. It's only been in the last couple -- few weeks that we've seen things including all the way to last weekend, where they've sort of finalized what their plans are and pushed some things out.

These customers have not changed their long-term plans, their forecast for their revenue growth, their market share, their silicon carbide, their test times, those kinds of things. We think are still consistent with what we had been [indiscernible] which includes by the way test time reductions over time. Consistent with the models that we generated couple of few years ago, where, if you look at $4 million wafer starts, so thereabouts to support just the EV market, it would take somewhere on the order of 2000 wafers of capacity or 2000 of our blades for the overall market. And so we haven't changed that.

And in fact, I'll add one more thing here. Those numbers were based on this -- 30% penetration of 100 million vehicles or 30 million EVs in 2030, I keep using that 30, 30, 30 number. Last year for the bulk of the year, there were many people saying that EVs were going to be faster than that, there will be more than 30% penetration. We actually never repeated that, because our feeling was that just seems too aggressive. So in some ways, people's growth estimates have kind of modulated back to be consistent, I think with those 30, 30, 30 numbers.

So in that sense, it hasn't changed our opinion. But if you -- start looking at a discrete customer who was going to put it in - start installing tools this spring for having them ready in the fall and they shift things out two or three or four months, all of a sudden it impacts us. And that's the downside of the front end of this.

And what I hope people hear today and throughout the whole Q&A is, we're trying to be absolutely candid as possible and what the customers were telling us in previous quarters, we were communicating and now they have changed their timing of it and we're just trying to communicate that to it. ***We still have the capacity and the capability to exceed $100 million this year.*** If the customers came in and [Indiscernible] I need him after all, we still have the ability to do that. But right now that just doesn't seem like the most likely case. We don't think that is impacting our plans going forward and that we think we still have pretty solid growth expectations for next year and beyond.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

24.     In addition, during the Q&A portion of the Q2 2024 Earnings Call, when asked to discuss whether there "was a material change in the last 30 days in terms of demand and visibility to your business," Defendant Erickson responded, in relevant part:

Our lead customers forecast settled in only in the last week or so. Now, having said that, folks, it may not be the right answer. There's still a range. ***We took a very conservative stance in hopes there's no way we'll miss it on the low end, but I can see scenarios where we could be higher than the range I gave you***. But going out and saying we have a range of $75 million to $100 million just seemed weird silly. And so, we're taking this stance, I think we really think that this is appropriately communicating what the customers are telling us, and we could defend that and we're doing our best to just be open with people.

25.     Finally, during the Q&A portion of the Q2 2024 Earnings Call, when asked to explain why the Company was confident that it would not fall short of the low end of its updated FY 2024 forecast, Defendant Erickson responded, in relevant part:

We are in constant communication with all of these customers, and our lead customer is [indiscernible] candidly. I'd say that the numbers and the forecasts they've given us have been constant for the last 30 to 60 days but on the low end. And so that's why we have more clarity.

I think they have direct visibility of orders that they have from their customers and what that drives in terms of wafer packs and capacity, et cetera. But I will -- my personal belief is I don't think they have perfect visibility. And I think there's a little bit of reaction to the seeming slowdown. But now, with interest rates recovering and perhaps people getting through their inventory, maybe they'll be pleasantly surprised on their side. ***But, yes, I mean, we're down to knowing -- when we have these forecasts, we know what wafer pack mix it is, et cetera. So we have pretty good visibility. I'd say very good visibility***.

26.     That same day, the Company issued a press release entitled "Aehr Reports Strong Revenue and Earnings Growth for the Second Quarter and First Six Months of Fiscal 2024." The press quoted Defendant Erickson as stating, in relevant part:

"We had another solid quarter with strong year-over-year growth in revenue and net income as we continue to see increased demand for our wafer level test and burn-in products. Revenue for the quarter was $21.4 million, an increase of 45% year over year, and we generated non-GAAP net income of $6.7 million, slightly over 31% net profit. For the first half of the fiscal year, we grew revenue 65% over the same period last year.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

"In the last sixty days, we have seen how the slowing of the growth rate of the electric vehicle market has had a negative impact on the timing of several current and new customer orders and capacity increases for silicon carbide devices used in them. For clarity, we do not see the silicon carbide market decreasing, only a temporary slowing of the growth rate. We are also experiencing the impact of shifts in our customers' product mix, which specifically includes an increase in WaferPakTM full wafer contactors from our lead silicon carbide customer. The net of this is that we now expect a delay in the timing of new orders from current and new customers that will most likely impact this fiscal year's revenue.

"Given the latest forecasts from our customers and the uncertainty on the timing of their orders, we believe it makes sense to take a more conservative approach to our fiscal year forecast and have reduced our growth estimates for fiscal 2024 revenue. We are reducing our revenue expectations of at least $100 million this fiscal year by 15% to 25% to a range of $75 million to $85 million dollars. This is still a growth rate of 15% to 30% year over year.

"***Despite this uncertainty in the timing of orders, we remain confident about the future demand for our unique semiconductor test solutions and the markets they address. We have not reduced our growth expectations for the years ahead, where we continue to see tremendous opportunity. We continue to hear from our current customers as well as companies we are engaged in evaluations with that wafer level burn-in is critical to their product roadmaps to address multiple large and growing markets, including battery and hybrid electric vehicles, industrial and solar power conversion, data and telecommunications infrastructure, and the new and coming optical I/O and co-packaged optics semiconductor markets.***["]

\*\*\*

"As we look ahead, we expect continued strong demand for our wafer level burn-in solutions for the markets we currently address, as well as increased demand from the new market opportunities we are seeing. ***Even with our more conservative guidance, we expect solid year-over-year revenue growth and believe we are poised for continued strong growth for years to come.***"

27.    The statements referenced in ¶¶ 22-26 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) contrary to prior representations to investors, Aehr was continuing to experience substantial delays in customer orders; (ii) the foregoing issue was likely to have a material negative impact on the Company's

9

revenue growth; (iii) accordingly, the Company's business and/or financial prospects were overstated; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

28.    In addition, Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required Aehr to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Defendants' failure to disclose that Aehr was continuing to experience delays in customer orders violated Item 303 because this issue represented a known trend or uncertainty that was likely to have a material unfavorable impact on the Company's business and financial results.

### The Truth Emerges

29.    On March 25, 2024, the Company issued a press release entitled "Aehr Announces Preliminary Financial Results for its Fiscal 2024 Third Quarter; Provides Updated Full Year Revenue Guidance." The press release stated, in relevant part:

**For the fiscal third quarter ended February 29, 2024, Aehr expects:**

- Revenue of approximately ***$7.6 million***

\*\*\*

**For the fiscal 2024 full year ending May 31, 2024, Aehr expects:**

- Total revenue of at least ***$65 million***

\*\*\*

[Defendant] Erickson commented: "As we discussed in our second quarter earnings call, we had seen several push outs of forecasted orders by current and new customers that impacted our fiscal year revenue. We believe that this was due to two key factors. ***There is clearly softness in the overall semiconductor capital spending, particularly in automotive applications, related to a glut in inventory driving down near-term orders to these companies and has caused them to push out capital spending and drive cost reductions. Multiple companies including the***

*companies we had expected orders from have publicly discussed inventory related headwinds in their public earnings calls and press releases. In addition, we have seen specific shifts in order timing of our equipment used for wafer level test and burn-in of silicon carbide power semiconductors used in electric vehicles. In just the last two weeks of the quarter, we saw delays in orders for silicon carbide systems with customer-requested ship dates within the quarter as well as a last-minute push out by a customer of a system in our backlog.* The net effect of this was a significant shift in revenues out of the third and fourth quarters. Until this time, we had been hearing from those customers that their silicon carbide-based capital investments were not being impacted.

"*It is now clear that the recent overall softness in semiconductors and the impact of shifts in electric vehicle introductions and ramps are impacting our bookings and revenue forecasts more than we understood only two months ago at our last earnings call. We now expect this to last for another quarter or two before the orders resume based on the latest roll up of direct forecasts from over a dozen silicon carbide companies. We are now forecasting revenue for the full fiscal year to be $65 million or more, representing revenue of at least $15.4 million in our fiscal fourth quarter.* We still expect to finish the year with near or above record annual revenue for the year.

30.     On this news, this news, Aehr's stock price fell $3.29 per share, or 22.44%, to close at $11.37 per share on March 25, 2024.

31.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

32.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

11

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Aehr securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Aehr securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Aehr or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

37.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Aehr;

- whether the Individual Defendants caused Aehr to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Aehr securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

39.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Aehr securities are traded in an efficient market;

13

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Aehr securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

40.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

41.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

42.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

43.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state

material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Aehr securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Aehr securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

45.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Aehr securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Aehr's finances and business prospects.

46.    By virtue of their positions at Aehr, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant

knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

47.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Aehr, the Individual Defendants had knowledge of the details of Aehr's internal affairs.

48.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Aehr.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Aehr's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Aehr securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Aehr's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Aehr securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

49.     During the Class Period, Aehr securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Aehr securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise

acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Aehr securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Aehr securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

50.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

51.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

### COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

52.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.    During the Class Period, the Individual Defendants participated in the operation and management of Aehr, and conducted and participated, directly and indirectly, in the conduct of Aehr's business affairs.  Because of their senior positions, they knew the adverse non-public information about Aehr's misstatement of income and expenses and false financial statements.

54.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Aehr's

financial condition and results of operations, and to correct promptly any public statements issued by Aehr which had become materially false or misleading.

55.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Aehr disseminated in the marketplace during the Class Period concerning Aehr's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Aehr to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Aehr within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Aehr securities.

56.    Each of the Individual Defendants, therefore, acted as a controlling person of Aehr. By reason of their senior management positions and/or being directors of Aehr, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Aehr to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Aehr and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

57.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Aehr.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: December 3, 2024                              Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

THE LAW OFFICE OF JACOB SABO
Jacob Sabo
22a Mazzeh Street
Tel-Aviv, Israel
Telephone: (++972) 39070770

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS