POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant Lucid
Alternative Fund, LP and Proposed
Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| LUCID ALTERNATIVE FUND, LP, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AEHR TEST SYSTEMS, INC., GAYN ERICKSON, and CHRIS P. SIU,<br><br>Defendants. | Case No.: 3:24-cv-08683-SI<br><br>REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF LUCID ALTERNATIVE FUND, LP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION<br><br>CLASS ACTION<br><br>Date:  March 14, 2025<br>Time:  10:00 a.m.<br>Judge:  Hon. Susan Illston<br>Courtroom:  1 – 17th Floor |

Movant Lucid[1] respectfully submits this reply memorandum of law in further support of its motion for appointment as Lead Plaintiff and approval of its selection of Pomerantz as Lead Counsel (Dkt. No. 17); and in opposition to the motion of competing Lead Plaintiff movant Guo (Dkt. No. 13).

## I.    PRELIMINARY STATEMENT

The Action is a putative securities class action lawsuit on behalf of investors in Aehr securities.  As with all federal class action securities lawsuits, a lead plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as Lead Plaintiff the movant with the largest financial interest in the outcome of the action; and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Lucid is the presumptive "most adequate" plaintiff in the Action because: (1) having incurred an investment loss of $315,422 as a result of the Defendants' alleged fraud—a loss significantly larger than that claimed by Guo, the only competing movant—Lucid plainly has the "largest financial interest" in this litigation within the meaning of the PSLRA; and (2) it is a sophisticated institutional investor that satisfies Rule 23's typicality and adequacy requirements. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Guo, the only competing movant, nevertheless opposes Lucid's appointment, variously claiming that "Lucid has improperly inflated its losses by including purchases of Aehr . . . stock outside of the Class Period" and that Lucid "cannot meet Rule 23's typicality and adequacy requirements" for reasons related to its transactions in option contracts during the Class Period—namely, because Lucid's options trading was purportedly "extensive" and because Lucid

---

[1]All capitalized terms herein are defined in Lucid's moving or opposition briefs, unless otherwise indicated. *See* Dkt. Nos. 17, 22.

REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF LUCID ALTERNATIVE FUND, LP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION - 3:24-cv-08683-SI

"[p]rofited" from its purchases of put options, contending that, unlike a typical class member, Lucid engaged in such transactions "with the hope that the price [of Aehr stock] would fall[.]" *See* Dkt. No. 23 at 1, 3.

Guo's arguments lack merit. First, Lucid's investment losses are properly calculated, because Lucid's acquisitions of Aehr shares after the Class Period were the result of obligations that it incurred by selling Aehr put option contracts ***during*** the Class Period, making the losses that Lucid incurred on those sales an integral part of its financial interest in this litigation. Second, contrary to Guo's insinuation, there is nothing inherently atypical about options investors, and courts in fact routinely appoint such investors to serve as lead plaintiffs in PSLRA actions. *See, e.g.*, *Hall v. Medicis Pharm. Corp.*, No. CV08-1821PHX-GMS, 2009 WL 648626, at *4-6 (D. Ariz. Mar. 11, 2009) (appointing option holder as Lead Plaintiff instead of common stock purchaser); *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355, 357 (S.D.N.Y. 2011) (appointing movant group that included seller of put options as lead plaintiff where "the focus of the typicality analysis [was] . . . whether the same or similar injuries arose out of or were caused by Defendants' alleged wrongful course of conduct" (internal quotation marks omitted)). Nor is there anything about the nature of the Lucid's options trading specifically that would render it an atypical representative for the specific Class in this litigation, or inadequate to represent its interests. Notwithstanding its transactions in Aehr options, Lucid's Class Period trading activity reflected a positive long-term investment thesis with respect to Aehr's business prospects, informed by Defendants' false and misleading statements during the Class Period, which caused Lucid to purchase Aehr securities at artificially inflated prices. Lucid, like other investors, incurred losses—$315,422, in Lucid's case—giving it a strong incentive to vigorously prosecute the fraud claims against the Defendants and pursue a favorable recovery on behalf of the Class.

REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF LUCID ALTERNATIVE FUND, LP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION - 3:24-cv-08683-SI

Accordingly, Lucid respectfully submits that the Court should grant its motion in full and deny Guo's competing motion.

## II.    ARGUMENT

### A.    Lucid Has Not Inflated its Financial Interest

As discussed at length in its opposition brief (Dkt. No. 22), Lucid has alleged the greatest financial interest in the outcome of the Action, having incurred a loss of approximately $315,422 in connection with its Class Period transactions in Aehr securities—a loss nearly $232,700 larger than that claimed by Guo.  *See* Dkt. No. 17-3.  However, Guo argues that Lucid inflated its loss by including post-Class Period stock purchases in its calculations—that is, by including losses on Aehr shares that Lucid only acquired *after* the Class Period, pursuant to its obligations under put option contracts that Lucid sold *during* the Class Period.  *See* Dkt. No. 23 at 4.  Properly calculated, excluding losses on shares purchased after the Class Period, Guo contends that Lucid's loss is only "$261,640, not $315,422".  *See id.* at 5.

As a threshold matter, even assuming *arguendo* that Guo were correct and Lucid only incurred an investment loss of approximately $261,640 in connection with Defendants' alleged fraud, Lucid's loss would still be more than three times the size of Guo's $82,734 loss. Accordingly, Lucid would still have the largest financial interest in this litigation under any scenario.

In any event, however, Guo is wrong.  The losses that Lucid incurred in connection with the shares of Aehr stock that it purchased after the end of the Class Period, in accordance with its obligations under the put option contracts that it sold *during* the Class Period, absolutely comprise part of its financial interest in this litigation.  During the Class Period, Lucid sold various put option contracts—that is, contracts giving the buyer the right to sell Aehr securities at a set price

3

(the "strike price") if the market price for Aehr securities fell below the strike price prior to the contract's expiration.  The strike price for Lucid's put options was $22.50, meaning that if the market price for Aehr securities fell below $22.50 per share, Lucid would become obligated to buy Aehr stock from its contractual counterparty at $22.50 per share, which at that point would be above prevailing market prices.  In selling put options on these terms, then, Lucid was betting that Aehr's stock price would ***not*** fall below the $22.50 strike price, as the opposite outcome would obligate Lucid to engage in an unprofitable transaction (as it ultimately did).  Lucid's Class Period investment decisions regarding these put option contracts, made while the Defendants' false and misleading statements are alleged to have artificially inflated the Company's share price, thus reflected a bullish investment thesis with respect to the Company's prospects.

When the Defendants' fraud was ultimately revealed at the end of March 2024 and the market learned the truth about Aehr's operations, the Company's share price fell precipitously— contrary to Lucid's expectations when it sold the put option contracts at issue.  The sharp drop in Aehr's share price pushed it below the $22.50 strike price for Lucid's option contracts, enabling its counterparties to exercise their right to sell—and to force Lucid to buy—Aehr shares at above-market prices.  In making these contractually required purchases of Aehr stock at above-market prices, Lucid incurred significant investment losses.  Thus, although Lucid incurred these losses after the end of the Class Period, the losses were undeniably a consequence of the investment decisions that Lucid made to purchase put option contracts ***during*** the Class Period, in reliance upon the Defendants' false and misleading statements about the Company, which artificially inflated Aehr's stock price.  As such, these losses plainly comprise part of Lucid's financial interest in the relief sought in this litigation.

REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF LUCID ALTERNATIVE FUND, LP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION - 3:24-cv-08683-SI

**B.      Lucid's Options Transactions Do Not Render It Atypical or Inadequate**

Guo further argues that Lucid is atypical and inadequate under Rule 23 by virtue of its "extensive" transactions in Aehr option contracts during the Class Period, claiming that such "atypical investment strategies" disqualify Lucid from serving as Lead Plaintiff.  *See* Dkt. No. 23 at 2-3.  Among other things, Guo points to the fact that "Lucid bought put options", purportedly "betting that the price of Aehr stock would fall", and that Lucid profited from these purchases. Dkt. No. 23 at 3.

Guo's arguments uniformly fail.  As a threshold matter, Guo's suggestion that options are inherently exotic and complex financial instrument that automatically render investors atypical is incorrect.  Options are commonly encountered securities that are widely traded and available to many investors, and courts routinely appoint as lead plaintiffs movants who incurred losses as a result of options investments.  *See, e.g.*, *Medicis*, 2009 WL 648626, at \*4-6 appointing option holder as Lead Plaintiff instead of common stock purchaser); *Puda Coal*, 827 F. Supp. 2d at 357 (appointing movant group that included seller of put options as lead plaintiff where "the focus of the typicality analysis [was] . . . whether the same or similar injuries arose out of or were caused by Defendants' alleged wrongful course of conduct" (internal quotation marks omitted)).  Further, "courts typically treat both stockholders and options holders as members of the same plaintiff class" (*Hall*, 2009 WL 648626, at \*5 (collecting cases))), and courts across the country have certified options investors as class representatives on behalf of options and stock investors.  *See Nursing Home Pension Fund v. Oracle Corp.*, No. C01-00988 MJJ, 2006 WL 8071391, at \*8 (N.D. Cal. Dec. 20, 2006) (finding the sale of call options in conjunction with the purchase of common stock was not atypical of the class); *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150,

REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF LUCID ALTERNATIVE FUND, LP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION - 3:24-cv-08683-SI

155 (N.D. Cal. 1991) (finding the typicality requirement satisfied where "the value of options is directly related to the value of common stock").

Nor is there anything about the nature of Lucid's options transactions in this Action that render it atypical. The inquiry for typicality is "'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Veal v. LendingClub Corp.*, No. 18-cv-02599-BLF, 2018 WL 5879645, at *4 (N.D. Cal. Nov. 07, 2018) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Here, the Complaint expressly defines the putative Class as consisting "of persons and entities [. . .] that purchased **or otherwise acquired** Aehr **securities**"—that is, not merely stock—"between January 9, 2024 and March 24, 2024, both dates inclusive". Dkt. No. 1 ¶ 1 (emphases added). As discussed at length, *supra*, at pp. 3-4, Lucid sold Aehr put option contracts during the Class Period, while the price of Aehr securities is alleged to have been artificially inflated by the Defendants' false and misleading statements. As a result of its options investments, Lucid became obligated to acquire shares of Aehr stock at above-market prices, on which it incurred losses when the truth about Aehr's business and operations came to light, causing the value of Aehr shares to decline in value. Lucid's claims are thus typical of any other member of the Class in this Action, each of whom likewise claims to have lost money on their investments in Aehr securities as a result of the Defendants' false and misleading statements, which caused Class members to purchase Aehr securities at artificially inflated prices during the Class Period and to incur losses on their investments after the Defendants' alleged fraud was subsequently revealed.[2]

---

[2] Additionally, Guo asserts that Lucid's motion should be denied because it "regularly engages in [. . .] atypical investment strategies," citing transactional data submitted by Lucid in three other securities class actions. Dkt. No. 23 at 3. However, as discussed, trading in option contracts does

REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF LUCID ALTERNATIVE FUND, LP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION - 3:24-cv-08683-SI

Guo also argues that Lucid is atypical and inadequate because "[i]n addition to buying other types of options, Lucid bought put options—betting that the price of Aehr stock would fall". Dkt. No. 23 at 3. This, too, is incorrect. As an initial matter, Guo's characterization of these transactions as "betting that the price of Aehr stock would fall" is inaccurate. Rather, Lucid primarily held a "long" position with respect to its Aehr investments, meaning, like other Class members, it invested in Aehr securities in the expectation that the Company's stock price would remain stable or rise, in good-faith reliance on Defendants' positive statements during the Class Period. *See In re Scientific-Atlanta, Inc. Secs. Litig.*, 571 F. Supp. 2d 1315, 1330 (N.D. Ga. 2007) (finding options investor typical, having purchased in reliance "on the integrity of the price of the underlying stock"). Lucid acquired 34,000 shares of Aehr stock from the sale of put options at various points between October 30, 2023 and January 11, 2024—well before the end of the Class Period. *See* Dkt. Nos. 17-3, 17-5. Then, instead of selling the large quantities of stock that it acquired through the put option assignments, it continued to hold most of those shares well into the Class Period and ultimately held 45,000 shares through the end of the Class Period, thereby indicating that it was bullish on the Company's prospects. *See id.* Moreover, Lucid purchased an additional 16,000 shares of Aehr stock on the open market—*i.e.*, not pursuant to the sale of put options—during the Class Period on January 9 and January 10, 2024. *See id.* Considered in the context of the predominantly long position that Lucid held on Aehr securities during the Class Period, then, Lucid's purchases of put options do not indicate that Lucid was betting against Aehr stock, as Guo contends. Rather, when Lucid bought Aehr put options, it was merely employing a common hedging strategy to modestly reduce its losses when Aehr's stock price declined, while

not equate to atypicality, as Guo suggests, and Lucid's transactions in the cases that Guo cites have no bearing on its adequacy as a Class representative here.

7

continuing to take a bullish long-term position on Aehr's prospects. And while Lucid may have profited on its Class Period options transactions, its $108,610 in profits on those transactions pales in comparison to the $424,032 in losses that Lucid incurred in connection with its purchases of Aehr common stock, netting out to a total loss of $315,422. *See Oracle Corp.*, 2006 WL 8071391, at *8 (finding that even if plaintiff "made a profit . . . over the Class Period" with respect to options transactions, that fact "fails to establish that he suffered no injury" where he also "made several ordinary purchases of common stock based on [the company]'s alleged" fraud and certifying said plaintiff as class representative). Indeed, given the magnitude of Lucid's loss, it will have every incentive to vigorously pursue a recovery on behalf of the Class, irrespective of whatever marginal profits it made in connection with a subset of its Class Period transactions.

Finally, as a matter of law, "[c]ourts have rejected the argument that the use of sophisticated investment strategies disqualifies a party from serving as lead plaintiff or necessarily undermines reliance, particularly at this stage of the litigation." *Chauhan v. Intercept Pharms.*, No. 21-CV-00036, 2021 WL 235890, at *6 (S.D.N.Y. Jan. 25, 2021). Indeed, numerous courts have recognized that a movant's use of more sophisticated investment strategy does not rebut typicality as long as the movant appears to have relied on the market price for the stock. *See, e.g.*, *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, No. 14-CV-8925, 2015 WL 1311073, at *8 (S.D.N.Y. Mar. 23, 2015) ("Investment strategies intended to mitigate risk do not render a movant atypical or inadequate."); *In re Imax Sec. Litig.*, No. 06 CIV.6128, 2011 WL 1487090, at *7 (S.D.N.Y. Apr. 15, 2011) (holding that the use of a merger arbitrage investment strategy does not subject a presumptive lead plaintiff to a unique defense and therefore does not rebut the presumption of adequacy); *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 109 (S.D.N.Y. 2004) ("The fact that these traders have divergent motivations in purchasing shares should not defeat the fraud-on-

the-market presumption absent convincing proof that price played no part whatsoever in their decision making."). As set forth above, nothing about Lucid's transactions in Aehr option contracts undermines its typicality or adequacy under Rule 23. Guo's argument thus reduces, in essence, to arguing that employing complex investment strategies *per se* disqualifies a movant from appointment as Lead Plaintiff in a PSLRA action. There is no support in federal securities jurisprudence for such a restrictive rule.

## III.    CONCLUSION

For the foregoing reasons, Lucid respectfully requests that the Court issue an Order: (1) appointing Lucid as Lead Plaintiff for the Class; and (2) approving Lucid's selection of Pomerantz as Lead Counsel for the Class.

Dated: February 25, 2025

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movant Lucid*
*Alternative Fund, LP and Proposed Lead*
*Counsel for the Class*

REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF LUCID ALTERNATIVE FUND, LP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION - 3:24-cv-08683-SI

THE LAW OFFICE OF JACOB SABO
Jacob Sabo
22a Mazzeh Street
Tel-Aviv, Israel
Telephone: (+972) 39070770

*Additional Counsel for Lead Plaintiff*
*Movant Lucid Alternative Fund, LP*

REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF LUCID ALTERNATIVE FUND, LP
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO
COMPETING MOTION - 3:24-cv-08683-SI

**PROOF OF SERVICE**

I hereby certify that on February 25, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

/s/ Jennifer Pafiti
Jennifer Pafiti

11

REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF LUCID ALTERNATIVE FUND, LP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION - 3:24-cv-08683-SI