UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCID ALTERNATIVE FUND, LP,<br><br>Plaintiff,<br><br>v.<br><br>AEHR TEST SYSTEMS, INC., et al.,<br><br>Defendants. | Case No. 24-cv-08683-SI<br><br>**ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL**<br><br>Re: Dkt. Nos. 13, 17 |

Two competing movants, Lucid Alternative Fund, LP and Yue Guo, have filed motions seeking appointment as lead plaintiff in this securities fraud class action litigation. For the reasons stated below, the Court DENIES Lucid's motion and GRANTS Guo's motion.

## BACKGROUND

Institutional investor Lucid Alternative Fund, LP filed a complaint in this Court against Aehr Test Systems, Inc. and Gayn Erickson and Chris Siu, Aehr's Chief Executive Officer and Chief Financial Officer, respectively. Dkt. No. 1. The complaint alleges Aehr propounded materially false and misleading statements in violation of the Securities Exchange Act of 1934 regarding its revenue projections and performance during its fiscal year 2024. *Id.* Specifically, the complaint alleges that (1) in October 2023 the company advertised that it expected its revenue for the fiscal year to be "at least $100 million," (2) on an earnings call on January 9, 2024 defendant Erickson reduced the revenue prediction to $75 to $85 million, but reiterated this was a conservative position and that the company could reach the $100 million target, and (3) on March 25, 2024, Aehr issued a press release adjusting its revenue expectation to $65 million for the fiscal year ending May 31, 2024. *Id.* at 5-11. As a result of this news, the company's stock price fell 22.44% on March 25,

United States District Court
Northern District of California

2024.  *Id.* at 11.

Lucid initiated a securities fraud class action for a class of persons and entities that purchased Aehr securities from January 9, 2024 to March 24, 2024.  *Id.* at 2.  Lucid published notice of the action on December 3, 2024.  Dkt. No. 6.  The notice established a deadline of February 3, 2025 for parties to seek appointment as lead plaintiff in this action.  *Id.*

On February 3, 2024, Lucid and individual investor Yue Guo each filed motions requesting appointment as Lead Plaintiff.  Dkt. Nos. 13, 17.  Lucid is a hedge fund based in the Cayman Islands that manages approximately $85 million in assets.  Dkt. No. 17-6.  The fund asserts a net loss of $315,422 for 50,000 shares of Aehr common stock and 1,646 Aehr options contracts purchased during the class period.[1]  Dkt. No. 17-3.  Lucid selected Pomerantz to serve as Lead Counsel.  Dkt. No. 17 at 12.

Guo is retired, lives in Thailand, and "primarily focuses his time on investing and has over eleven years of investing experience."  Dkt. No. 13 at 6.  Guo purchased 17,800 shares of Aehr stock during the class period and presents an associated estimated loss in value of $82,733.84.  Dkt. No. 14-3.  Guo selected Rosen Law to serve as Lead Counsel.  Dkt. No. 13 at 7.

## LEGAL STANDARD

Section 21D of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), codified at 15 U.S.C. § 78u-4, is "intended to encourage the most capable representatives of the plaintiff class to participate in class action litigation and to exercise supervision and control of the lawyers for the class."  Joint Explanatory Statement of the Comm. of Conf., H.R. Rep. No. 104-369, at 32 (1995) (Conf. Rep.).  More precisely, Congress sought to "increase the likelihood that institutional investors will serve as lead plaintiffs."  *Id.* at 34.  Under the PSLRA, all proposed lead plaintiffs must submit a sworn certification setting forth certain facts designed to assure the Court that the

---

[1] Movant Guo contends that Lucid's losses should exclude 5,000 shares of stock purchased after the close of the class period, resulting in an adjusted net loss of $261,640 for Lucid.  Dkt. No. 23 at 5.  Lucid responds by noting these purchases are properly included because they are the result of put option contracts that Lucid sold during the class period.  Dkt. No. 28 at 3.

United States District Court
Northern District of California

1  plaintiff has suffered more than a nominal loss, is not a professional litigant, and is otherwise

2  interested and able to serve as a class representative.  15 U.S.C. § 78u-4(a)(2)(A).

3      Once the application window for lead plaintiff status closes, the district court must determine

4  which proposed plaintiff is the "most adequate" to represent the interests of class members.  *Id.*,

5  § 78u-4(a)(3)(B)(i).  The lead plaintiff with the largest financial interest in the case becomes

6  presumptively the most adequate plaintiff as long as they satisfy the requirements of Rule 23 of the

7  Federal Rules of Civil Procedure, in particular the "typicality" and "adequacy" requirements.  *In re*

8  *Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Other potential

9  lead plaintiffs may then rebut the presumption by proving that the lead plaintiff "will not fairly and

10  adequately protect the interests of the class; or [] is subject to unique defenses that render such

11  plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  In

12  other words: by showing that the lead plaintiff does not meet the typicality and adequacy

13  requirements for class action representation.  *In re Cavanaugh*, 306 F.3d at 730.

14      After the court has designated a lead plaintiff, the lead plaintiff "shall, subject to the approval

15  of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  The

16  PSLRA "clearly leaves the choice of class counsel in the hands of the lead plaintiff."[2]  *In re*

17  *Cavanaugh*, 306 F.3d at 734.  "A court generally should accept the lead plaintiff's choice of counsel

18  unless it appears necessary to appoint different counsel to protect the interests of the class."  *Robb*

19  *v. Fitbit Inc.*, No. 16-CV-00151-SI, 2016 WL 2654351, at *7 (N.D. Cal. May 10, 2016) (internal

20  quotation marks and citation omitted).

21

22                                        **DISCUSSION**

23      Two parties applied for lead plaintiff status within the designated sixty-day filing period,

24

25  _____

26      [2] One legal treatise interprets the PSLRA differently in this regard: "The 1995 Reform Act
    expressly gives the trial judge discretion in lead counsel selection. Courts should give some weight
27  to the plaintiff's choice of counsel, but blindly deferring to the choice by the class representative
    ignores the 'race to the courthouse' concerns of the [PSLRA]."  Selection of Lead Counsel in
28  Securities Class Actions, 4 Law Sec. Reg. § 12:133.  Factors to be considered may include the
    counsel's experience and fee proposal.  *Id.*

United States District Court
Northern District of California

1    Lucid Alternative Fund, LP and Yue Guo.  The Court finds that movant Lucid has a larger financial

2    interest than movant Guo, regardless of whether the purchases that Guo contests are included in the

3    calculations.  The Court further finds that Lucid has made a prima facie showing that it meets the

4    requirements of adequacy and typicality.  *See* Dkt. No. 17 at 8-11; *In re Cavanaugh*, 306 F.3d at

5    730; *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021).

6        The question for the Court is therefore whether Guo can successfully rebut this presumption

7    by challenging Lucid's adequacy or typicality.  A movant is adequate if the movant and movant's

8    counsel will vigorously pursue the action and do not have conflicts of interest with other class

9    members.  *In re Mersho*, 6 F.4th at 899-900 (citations omitted).  In the typicality inquiry, courts ask

10    "'whether other members have the same or similar injury, whether the action is based on conduct

11    which is not unique to the named plaintiffs, and whether other class members have been injured by

12    the same course of conduct.'"  *Veal v. LendingClub Corp.*, No. 18-CV-02599-BLF, 2018 WL

13    5879645, at *4 (N.D. Cal. Nov. 7, 2018) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508

14    (9th Cir. 1992)).  A proposed class representative may be inappropriate for that role when it "is

15    subject to unique defenses which threaten to become the focus of the litigation."  *Hanon*, 976 F.2d

16    497 at 508 (internal quotation marks and citation omitted).

17        Guo challenges Lucid's typicality and adequacy on the basis of Lucid's "extensive" options

18    trading.  Dkt. No. 23 at 2-4.  The value of a stock option is tied to the underlying value of the stock.

19    Stock options contracts come in two main forms, call options and put options.  A party that buys a

20    call option buys the ability to acquire shares of stock by a certain date at a designated "strike price."

21    If the stock price rises above the strike price, the party holding a call option can then buy the shares

22    at the below-market strike price, therefore making a profit (minus the premium paid for the option

23    in the first place).  If the stock price never rises above the strike place, the call option will not be

24    exercised and the option buyer considers the paid premium a loss.  Conversely, a party that buys a

25    put option buys the ability to sell a share of stock at a strike price by a certain date to the other party.

26    The party buying the put option hopes the stock price will drop below the strike price, while the

27    seller hopes the stock price stays above the strike price.  In short, a party that either buys a call

28    option or sells a put option makes money when the stock price rises or stays above a certain level,

while a party that sells a call option or buys a put option makes money when the stock price stays or falls below a certain level.  Investors often use option contracts as a sort of insurance to mitigate investment risk.

Courts have taken different approaches when considering whether options traders meet the requirements of adequacy and typicality.  Some have disqualified options traders from being lead plaintiffs because their presence "would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and [] could subject the class to unique defenses, causing unnecessary conflict." *In re Elan Corp. Sec. Litig.*, No. 1:08-CV-08761-AKH, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009) (citation omitted); *see also Cook v. Allergn PLC*, No. 18 CIV. 12089 (CM), 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) [disqualifying movant when 60% of his claimed losses were the result of options trading].  Courts have also ruled out investors in securities fraud actions "who engaged in a trading practice premised on the belief the stock would fall" because such a practice raises "the question of whether the seller was actually relying on the market price." *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1109-10 (N.D. Cal. 2001) [considering a short-selling investor].  And specific to put option sellers, one court reasoned:

> While put option sellers and common stock purchasers may rely on the same general assumption that the underlying stock price will rise (or at least not decrease), [citation], there are also significant differences that draw into question the adequacy of put sellers as class representatives. For example, put sellers operate on different time horizons than do common stock purchasers. Puts are time-limited; a put seller bets that a company's stock value will not decline to a specified strike price within the life of an option. Common stock purchasers do not operate under the same limitations. The Court agrees . . . that appointing movants whose losses overwhelmingly relate to options trades (and whose option-trading strategies may have been motivated by different market incentives than common stock traders) would introduce factual issues irrelevant to the class as a whole.

*Jaramillo v. Dish Network Corp.*, No. 23-CV-00734-GPG-SKC, 2023 WL 5312062, at *5 (D. Colo. Aug. 16, 2023); *see also Di Scala v. ProShares Ultra Bloomberg Crude Oil*, No. 20 CIV. 5865 (NRB), 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020) [declining to appoint as lead plaintiff an investor "whose losses overwhelming reflect his sale of put options"].

United States District Court
Northern District of California

However, courts have also reached the opposite conclusion, finding options traders qualified to be lead plaintiffs in certain circumstances. One decision before *Jaramillo* held that a put option seller met the typicality requirement because "the put option seller generally relies—in like fashion to a stock purchaser—on the integrity of the price of the underlying stock." *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1330 (N.D. Ga. 2007). Courts have deemed typical investors who both traded in common stock and sold put options. *See Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355 (S.D.N.Y. 2011); *see also Nursing Home Pension Fund v. Oracle Corp.*, No. C01-00988 MJJ, 2006 WL 8071391, at *8-9 (N.D. Cal. Dec. 20, 2006) [refusing to disqualify at the class certification stage one of the plaintiffs who made purchases of ordinary common stock and sold call options]. Another court approved an options trader when the majority of the investor's loss was from common stock, not options. *Chauhan v. Intercept Pharms.*, No. 21-CV-00036 (LJL), 2021 WL 235890, at *7 (S.D.N.Y. Jan. 25, 2021). And finally, while acknowledging "a divergence of authority on the subject," a court has allowed an options trader to be lead plaintiff when the challenging movant failed to provide evidence "suggesting that the nature of his options, the history of their purchase and sale, or some other factor made him inadequate to represent the class." *Hall v. Medicis Pharm. Corp.*, No. CV08-1821PHX-GMS, 2009 WL 648626, at *4 (D. Ariz. Mar. 11, 2009).

Here, Lucid purchased common stock, bought and sold call options, and sold put options during the class period.[3] Dkt. Nos. 17-3, 17-5. Lucid purchased 16,000 shares of Aehr stock on the open market on January 9 and 10, 2024.[4] *Id.* Then, between January 17 and March 15, 2024, Lucid purchased another 29,000 shares of stock at above-market prices because of obligations incurred from the sale of put option contracts on October 30, 2023 (5,000 shares)[5] and January 10 and 11,

---

[3] Lucid also bought several put options but it appears these purchases occurred after the class period ended. Dkt. No. 17-3, 17-5.

[4] In comparison, movant Guo bought a total of 17,800 shares of Aehr stock on the open market over the course of the class period. Dkt. No. 14-3.

[5] The Court questions whether these 5,000 shares are appropriately included in Lucid's loss calculations. Lucid incurred the obligation to buy these shares prior to the class period and prior to the alleged misleading statements, then purchased the shares during the class period when it alleges the value of the stock was artificially high. Since the original obligation was incurred before the first alleged misleading statement, the fraud-on-the-market theory would not apply. In fact, if the

2024 (24,000 shares). *Id.* Finally, Lucid was obligated to purchase another 5,000 shares in April 2024, after the class period ended, as a result of a put option it sold on January 10, 2024. *Id.* Altogether, 68% of Lucid's listed stock acquisition was the result of obligations arising from sold put contracts. In addition, Lucid bought and sold call options in numerous transactions. *Id.* Overall, one could look at the trading information and conclude that Lucid made money from its options transactions, but the most profitable of those transactions—the sale of put options—led to the obligatory purchase of 34,000 shares of Aehr stock, purchases on which Lucid incurred a significant loss. Dkt. Nos. 17-3, 17-5.

Considering this transaction history, the Court finds Lucid to be an adequate lead plaintiff, as it sees no basis for a conflict of interest with other class members and no reason to doubt Lucid's ability to prosecute the action with vigor. *See In re Mersho*, 6 F.4th at 899-900. The Court recognizes that Lucid did not act like a short seller, betting on a decline in stock value. *Cf. In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d at 1109-10.

However, the volume and multidirectional nature of Lucid's options trades, in particular its sale of put options, raise legitimate questions about whether it meets the typicality requirement of the PSLRA. Like the disqualified movants in *Cook*, *Di Scala*, and *Jaramillo*, the majority of Lucid's stock losses are directly traceable to its sale of put options. Roughly two-thirds of Lucid's stock acquisitions resulted from its sale of put option contracts, potentially "introduc[ing] factual issues irrelevant to stockholder class members." *In re Elan Corp. Sec. Litig.*, No. 1:08-CV-08761-AKH, 2009 WL 1321167, at *2. As the *Jaramillo* court persuasively notes, options contracts involve different "time horizons" than common stock purchases, which may complicate the question of losses attributable to the alleged fraud on the market. In short, the complexity of Lucid's options trades raise the specter of "unique defenses" that might distract or even derail the litigation. *See Hanon*, 976 F.2d 497 at 508; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The Court therefore DENIES Lucid's motion to be named lead plaintiff on the basis of its atypicality.

_____

stock was artificially overvalued, Lucid would have benefitted from the alleged overvaluation if it had resold the purchased shares prior to the corrective statement on March 25, 2024.

1    Movant Guo only asserts losses related to the purchase of 17,800 shares of Aehr stock on

2    the open market and thus meets the tests of adequacy and typicality.  As Guo is the sole remaining

3    movant before the Court who meets the requirements of the PSLRA, the Court GRANTS movant

4    Guo's motion to be named lead plaintiff in this action.

5    Movant Guo selected Rosen Law as lead counsel.  The PSLRA gives the lead plaintiff the

6    primary say in the selection of lead counsel.  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court finds that

7    Rosen Law has the relevant experience and qualifications to advocate effectively on behalf of the

8    class.  *See* Dkt. No. 14-4.  The Court does not consider it "necessary to appoint different counsel to

9    protect the interests of the class" and accordingly designates Rosen Law as lead counsel.  *See Robb*

10    *v. Fitbit Inc.*, No. 16-CV-00151-SI, 2016 WL 2654351, at *7.

11

12    **CASE SCHEDULE AND NEXT STEPS**

13    If lead plaintiff Guo chooses to amend the complaint, the parties are directed to meet and

14    confer to set a schedule for lead plaintiff's filing of an amended complaint and defendants' response

15    to the complaint and to present a joint schedule to the Court.

16    Pursuant to the PSLRA and the Federal Rules of Civil Procedure—as well as for the sake of

17    clarity and efficient case management—lead plaintiff is directed to set out in chart form the

18    securities fraud allegations under the following headings on a numbered, statement-by-statement

19    basis: (1) the speaker(s), date(s) and medium; (2) the false and misleading statements; (3) the reasons

20    why the statements were false and misleading when made; and (4) the facts giving rise to a strong

21    inference of scienter.  The chart may be attached to or contained in an amended complaint or will

22    deemed to be a part of the complaint if submitted separately.  If lead plaintiff decides to rest on the

23    original complaint, the chart is due by April 25, 2025.

24    Should defendants move to dismiss, the Court cautions that it discourages "[t]he overuse and

25    improper application of judicial notice and the incorporation-by-reference doctrine[.]"  *See Khoja*

26    *v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  The Court advises the parties to

27    be judicious with regard to requests for judicial notice in connection with motions to dismiss.

28

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS movant Guo's motion to appoint lead plaintiff and lead counsel and correspondingly DENIES movant Lucid's motion to appoint lead plaintiff and lead counsel.


**IT IS SO ORDERED**.

Dated: March 19, 2025

_____
SUSAN ILLSTON
United States District Judge